**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:13-CV-00055-RLV-DCK**

| | | |
|---|---|---|
| GARY J. ANDERSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's Motion for Summary Judgment (Doc. No. 8); Defendant's Motion for Summary Judgment (Doc. No. 10); Magistrate Judge Keesler's Memorandum and Recommendation (the "M&R") (Doc. No. 11); and Plaintiff's Objections to the Recommendation of the United States Magistrate Judge (Doc. No. 12). The Magistrate Judge recommends that Plaintiff's motion be denied, that Defendant's motion be granted, and that the Commissioner's decision be affirmed.

Because the motions and briefs are filed and pending, this matter is now ripe for review. For the reasons set forth more fully below, the Plaintiff's objections to the M&R are **OVERRULED** and the Court **ADOPTS** the recommendations of the Magistrate Judge's M&R as **MODIFIED** by the analysis set-forth herein. Therefore, based on the record and applicable law, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment. Accordingly, the Court **AFFIRMS** the decision of the Commissioner.

## I.    PROCEDURAL SUMMARY

Plaintiff does not lodge any specific objections to the procedural or factual history contained in the Magistrate Judge's Memorandum and Recommendation ("M&R") or the

Administrative Law Judge's ("ALJ") decision. Therefore, the Court will primarily base its analysis on the procedural and factual history determined by the M&R and the ALJ's written decision. However, the Court may cite to (and discuss) other record evidence as is appropriate.

On August 25, 2005, Plaintiff Gary J. Anderson filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 405, *et seq*., alleging an inability to work due to a disabling condition beginning September 15, 2002. [Doc. No. 11] at p. 1; <u>see</u> <u>also</u> Transcript of the Record of Proceedings ("Tr.") at pp. 30, 74-76.[1] The Commissioner of Social Security (the "Commissioner" or "Defendant") first denied Plaintiff's application on December 13, 2005 and, upon reconsideration, again denied the application on May 31, 2006. [Doc. No. 11] at pp. 1-2; <u>see</u> <u>also</u> Tr. at pp. 30, 57-59, 70-73. On July 31, 2006, Plaintiff timely filed a written request for a hearing. [Doc. No. 11] at p. 2; <u>see</u> <u>also</u> Tr. at pp. 30, 53. Plaintiff's request was granted and a hearing was held before Administrative Law Judge Joseph E. Brezina on February 6, 2008. [Doc. No. 11] at p. 2; <u>see</u> <u>also</u> Tr. at pp. 30, 328-373. At the hearing, Plaintiff testified in support of his application. [Doc. No. 11] at p. 2; <u>see</u> <u>also</u> Tr. at pp. 30, 328-373. The ALJ also heard testimony from Louise H. Walker, a vocational expert, and Roger Martin, Plaintiff's case manager. [Doc. No. 11] at p. 2; <u>see</u> <u>also</u> Tr. at pp. 30, 328-373. At the hearing, Plaintiff's alleged disability onset date was revised from September 15, 2002 to November 2, 2004. [Doc. No. 11] at p. 2; <u>see</u> <u>also</u> Tr. at p. 30.

The ALJ issued his decision denying Plaintiff's disability claim on November 3, 2008. [Doc. No. 11] at p. 2; <u>see</u> <u>also</u> Tr. at pp. 27-38. The ALJ denied the claim on the basis that Plaintiff was not "disabled," as such term is defined by statute and applicable regulations, for the period

---

[1]  The administrative record was not electronically filed with the Court. Therefore, all citations to the administrative record will be to the file stamped paper copy on file with the Clerk.

between November 2, 2004 and the date of the decision.[2] [Doc. No. 11] at p. 2; Tr. at p. 31. Plaintiff

timely requested review of the ALJ's decision on December 30, 2008. [Doc. No. 11] at p. 2; Tr. at

pp. 24-25. On June 22, 2009, the Appeals Council denied review of the ALJ's decision. [Doc. No.

11] at p. 2; Tr. at pp. 20-22. On December 20, 2011, the Appeals Counsel set-aside its June 22,

2009 denial in order to receive and review additional evidence and briefing from Plaintiff's counsel

on the issue of Plaintiff's disability status. See Tr. at pp. 8-9, 12-13, 125-26. After consideration

of the additional evidence and briefing, the Appeals Counsel reaffirmed its June 22, 2009 denial

of review on February 15, 2013. See Tr. at pp. 5-7. Consequently, as a matter of law, the ALJ's

decision became the final decision of the Commissioner. Id.

On April 4, 2013, Plaintiff filed his complaint with this Court for the purpose of seeking

judicial review of the ALJ's November 3, 2008 decision. [Doc. No. 1]. Subsequently, Plaintiff and

Defendant filed cross-motions for summary judgment, which were referred to Magistrate Judge

Keesler for a Memorandum and Recommendation. On January 30, 2014, the Magistrate Judge

filed his M&R and recommended that the Commissioner's decision be affirmed. [Doc. No. 11].

Plaintiff timely filed his objection to the M&R on February 13, 2014. [Doc. No. 12]; see 28 USC

§ 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D.N.C., L.R. 72.1(C).

While Plaintiff's objection to the M&R was pending, the Fourth Circuit issued its opinion

in the case Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Out of an abundance of caution, this

Court directed that all parties to any pending action which seeks review of a disability

determination by the Commissioner file supplemental briefing with the Court for the purpose of

discussing the applicability of Mascio, if any, to the facts and issues surrounding their specific

case. Plaintiff and Defendant determined that supplemental briefing was not necessary and did not

---

[2] Although, the ALJ found that Plaintiff last met the insured status requirements of the Act on December 31, 2007. Tr. at p. 30.

file supplemental briefs with the Court. Because the parties have not specifically raised a <u>Mascio</u> issue in their briefs nor have they discussed the decision's impact on the case, the Court will not address any potential <u>Mascio</u> issues *sua sponte*. <u>See</u>, <u>e.g.</u>, <u>Toney v. Shalala</u>, 1994 U.S. App. LEXIS 23646, at *5 (4th Cir. 1994) ("By failing to raise this issue before either the Secretary or the district court as a basis for reversal of the denial of benefits, [Appellant] has waived appellate review."); <u>accord</u> <u>Watson v. Colvin</u>, 2015 U.S. App. LEXIS 16007 (4th Cir. Sept. 9, 2015) (finding party waived review of potential <u>Mascio</u> issues because such issues were raised for the first time on appeal and implying intervening change of law exception not applicable).

## II.    BACKGROUND

### A.    Proceedings Before the Administrative Law Judge

#### 1.    *ALJ's Five-Step Sequential Analysis*

The Social Security Administration has defined disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to last for a period of at least 12 months. 20 C.F.R. § 404.1505(a). To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. <u>See</u>, <u>e.g.</u>, <u>Heckler v. Campbell,</u> 461 U.S. 458, 461 n.2, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983) (noting a "need for efficiency" in considering disability claims). If at any step in the sequential evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981).

To that end, federal law requires that an ALJ evaluate a claimant's application for disability benefits by considering whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in

the Administration's Official Listings of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"); (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment (i.e., from performing "other work"). 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of his insured status to receive disability benefits. Everett v. Sec'y of Health, Educ. & Welfare, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step-five, the burden of production shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, work experience, and residual functional capacity. Grant, 699 F.2d at 191.

### 2. *ALJ's Written Decision*

Following a hearing and a review of the record evidence, the ALJ entered his decision denying disability benefits to the Plaintiff. In his decision, the ALJ made a variety of factual findings regarding the Plaintiff's work history, medical history, and medical conditions. At step-one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since November 2, 2004. Tr. at p. 32. At step-two, the ALJ found that the Plaintiff suffered from the following severe impairments: a birth defect of the left hand; a major depression and panic disorder; and degenerative disk disease with subjective complaints of back pain due to arthritis.[3] Id.; see 20 C.F.R. § 404.1520a; S.S.R. 96-8p, 1996 SSR LEXIS 5.

---

[3] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

At step-three, the ALJ's written decision determined that Plaintiff's impairments, taken alone or in combination, do not "meet[] or medically equal[] one of the listed impairments" found in the Listings. Tr. at p. 34.

Prior to beginning his step-four analysis, the ALJ determined the Plaintiff's residual functional capacity (the "RFC"). Specifically, the ALJ found as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform "light" work as defined in 20 CFR 404.1567(b) except the claimant requires work that is low stress (non-production oriented); simple, unskilled work activity which only requires one, two, or three step instructions; work that is not in close proximity to coworkers (meaning that the individual could not function as a member of a team); and, work that is not in direct contact with the public; he can lift or carry ten pounds frequently, and up to 20 pounds occasionally (from very little, up to 1/3 of an eight hour workday); he can stand and/or walk (with normal breaks) for a total of six hours in an eight hour workday; he can perform pushing and pulling motions with his right upper and both lower extremities, within the aforementioned weight restrictions; he can only occasionally perform pushing; pulling motions with his left upper extremity; he can perform activities requiring manual dexterity for both gross and fine manipulation with reaching and handling with his right-dominant hand; he can only use his left hand as a guide; and he can perform each of the following postural activities occasionally: climbing (ramps/stairs), balancing, stooping, kneeling, crouching, or crawling.

Tr. at pp. 34-35 (errant quotation mark omitted). The ALJ represented that, in developing the RFC, he relied on his assessment of the Plaintiff's credibility, record evidence of the Plaintiff's medical history, medical opinion evidence, and hearing testimony. Id. at pp. 34-37. Once the RFC was developed, the ALJ proceeded to steps four and five of his analysis.

At step-four, the ALJ found that the Plaintiff is unable to perform any past relevant work. Tr. at p. 37. However, under the step-five analysis, the ALJ determined that Plaintiff is capable of performing the functions of "other work." Id. at pp. 37-38. The ALJ based this finding on testimony given by the vocational expert. Id. The vocational expert noted that given the Plaintiff's age, education, experience, and residual functioning capacity, he would be able to perform the limited work-related functions associated with "light" and "unskilled" occupations, such as a photo copy

machine operator, sealing and cancelling operator, and router. Id. at p. 38. The ALJ concluded that the occupations listed by the vocational expert exist in significant numbers in the national economy and thus a finding of "not disabled" was appropriate under the regulations. Id.

B.    Federal District Court Proceedings

Displeased with the ALJ's determination, Plaintiff filed suit in this Court for the purpose of seeking judicial review of his claim for disability. [Doc. No. 1]. Thereafter, Plaintiff filed a motion for summary judgment, wherein Plaintiff took exception to the Commissioner's decision on a single, limited ground – that the ALJ erred by purportedly failing to resolve an evidentiary conflict between the RFC assessment and a medical source opinion of record, which, according to Plaintiff, indicates that "Plaintiff's ability to use his congenitally deformed left hand is significantly more restricted than the findings [the ALJ] made in the residual functional capacity assessment." [Doc. No. 8] at p. 3.

In support of this assignment of error, Plaintiff argues that the ALJ failed to properly consider consultative examiner Dr. Joel Hartman's examination notes, which purportedly indicate that Plaintiff's left hand cannot perform either basic or complicated manual tasks. See [Doc. No. 8] at pp. 6-7. Essentially, Plaintiff argues that Dr. Hartman's examination shows that he "cannot use his congenitally deformed left hand to grip" and the "ability to use an upper extremity to pull necessarily requires the ability to use the hand of that extremity to grip." See [Doc. No. 8] at pp. 4-7. Consequently, Plaintiff insists that Dr. Hartman's findings directly conflict with the RFC provision limiting Plaintiff to "occasionally perform[ing] . . . pulling motions with his left upper extremity." Id. On this basis, Plaintiff concludes that the ALJ's decision "fail[s] to resolve a substantial conflict between a medical opinion of record and the RFC assessment" to such a degree that remand is required so as to "compel the ALJ to evaluate Dr. Hartman's opinion in compliance

with the requirements of 20 C.F.R. § 404.1527(c)." Id. at pp. 7-8.

On January 30, 2014, the Magistrate Judge filed his M&R and rejected the Plaintiff's arguments. See, generally [Doc. No. 11]. In his M&R, the Magistrate Judge observed that the ALJ's decision "specifically discussed Dr. Hartman's examination [of Plaintiff], including [a] notation that 'the claimant presented with a claw-like deformity of the left hand with missing fingers.'" [Doc. No. 11] at p. 8 (citing and quoting the ALJ's decision); see Tr. at 33. Thus, the Magistrate Judge found Plaintiff's claim that the ALJ failed to consider Dr. Hartman's report to be unsupported by the decision itself. Id. at pp. 8-9.

With regard to Plaintiff's theory that "pulling" necessarily requires the ability to "grip," the Magistrate Judge did not credit this argument because Plaintiff cited no record evidence or other authority to support his contention. [Doc. No. 11] at p. 8. The Magistrate Judge also observed that the record indicates, at various points, that Plaintiff *does* retain the ability to grip with both hands. [Doc. No. 11] at pp. 8-9; see also Tr. at pp. 89-90, 102, 131, 138, 148, 220. Thus, even if the Plaintiff's gripping theory is credited, the Magistrate Judge found that it is mooted by other record evidence, which indicates that Plaintiff can grip with his left hand. Based on a review of the record and briefs, the Magistrate Judge found that the "ALJ properly considered the medical evidence" and "neither the ALJ's evaluation of Dr. Hartman's opinion, or Plaintiff's left hand deformity, require remand." [Doc. No. 11] at p. 10. Accordingly, the Magistrate Judge has recommended that the Commissioner's decision be affirmed. Id.

On February 13, 2014, the Plaintiff filed an objection to the Magistrate Judge's M&R (the "Objection"). [Doc. No. 12]. On February 14, 2014, the Commissioner filed her response to the Plaintiff's Objection (the "Response"). [Doc. No. 13]. Plaintiff's Objection is now subject to this Court's review.

### III.    DISCUSSION

#### A.    Standard of Review

Pursuant to the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner of Social Security is limited to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Rhyne v. Astrue, 2010 U.S. Dist. LEXIS 142595, *7-8 (W.D.N.C. 2011). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, if this Court finds that the Commissioner applied the correct legal standards and that the decision is supported by substantial evidence, the Commissioner's determination may not be capriciously overturned.

While "substantial evidence" is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988), it is "more than a scintilla and must do more than create a suspicion of the existence of a fact to be established." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (citing Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); Rhyne, 2010 U.S. Dist. LEXIS 142595, *8. Indeed, "[i]t means such relevant evidence that a reasonable mind would accept as adequate to support a conclusion." Smith, 782 F.2d at 1179; Rhyne, 2010 U.S. Dist. LEXIS 142595, *7-9. Critically, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" Dunn v. Colvin, 607 F. App'x 264, 266 (4th Cir. June 1, 2015). The standard is met by

"less than a preponderance" of the evidence. <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966).

"In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record in the first instance. <u>See Hays</u>, 907 F.2d at 1456; <u>Rhyne</u>, 2010 U.S. Dist. LEXIS 142595, *9. To be clear – as it stands on review, the issue before this Court is not whether Plaintiff *is* disabled, but whether the ALJ's finding that he is *not* disabled is supported by substantial evidence and based upon a correct application of relevant law.

B.   <u>The ALJ's RFC Assessment does not Conflict with the Medical Opinion of Dr. Joel Hartman and is Supported by Substantial Evidence</u>

1.   *Standard of Review of a Magistrate's M&R*

To assist it in its review of the Commissioner's denial of benefits, a court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of motions for summary judgment]." 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations and the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which [specific] objection is made." <u>Id.</u> at § 636(b)(1). Absent a specific and timely filed objection, a court reviews only for "clear error," and need not give any explanation for adopting the M&R. <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005); <u>Camby v. Davis</u>, 718 F.2d 198, 200 (4th Cir. 1983).

A Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight and the responsibility to make a final determination remains with this Court. Mathews v. Weber, 423 U.S. 261, 96 S. Ct. 549, 46 L. Ed. 2d 483 (1976). Accordingly, the Court must conduct "a careful review of the Magistrate Judge's Memorandum and Recommendation as well as a *de novo* review of those issues specifically raised" in an objection. See Lemken v. Astrue, 2010 U.S. Dist. LEXIS 128794, *2 (W.D.N.C. 2010) (Voorhees, J.). Once such a review is complete, the Court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

2.    *Plaintiff's Objection to the M&R and Defendant's Rebuttal*

In his Objection, Plaintiff requests that the Court set aside the M&R and remand the ALJ's decision denying Plaintiff's disability application. Plaintiff objects that the Magistrate Judge reached his decision by improperly relying upon the Defendant's "impermissible *post hoc* rationalizations" in order to make factual findings "as to the grip strength of Plaintiff's deformed left hand" and his ability to "pull with his left upper extremity without using that hand to grip." [Doc. No. 12] at pp. 1-7. Plaintiff claims that the Magistrate Judge had "no basis to accept Defendant's arguments" because neither the ALJ nor Plaintiff's physicians made "any findings or statements that Plaintiff can use his left upper extremity to pull without using his left hand to grip" and "[t]he ALJ did not address the issue of Plaintiff's left hand grip strength at all and made no finding of fact regarding that issue." [Doc. No. 12] at p. 4.

Fundamentally, Plaintiff contends the Magistrate Judge impermissibly found that Plaintiff's ability to "pull" with his left upper extremity does not require the ability to "grip" with his left hand and, in the alternative, made a factual finding that Plaintiff can "grip" with his left

hand, despite conflicting record evidence that was not explained or resolved by the ALJ. Id. at p. 4-5. In making his objection, it is clear that Plaintiff is simply reasserting the basic argument set forth in his motion for summary judgment.[4] He argues both the ALJ and Magistrate Judge committed error by finding that Plaintiff can "occasionally perform . . . pulling motions with his left upper extremity" because Dr. Hartman found Plaintiff is unable to grip with his left hand. [Doc. No. 12] at pp. 2-3. Plaintiff again contends that these findings are in conflict because the ability to "pull" necessarily requires the ability to "grip." Id. at p. 2.

Defendant responds by arguing that the Magistrate Judge did not make *any* findings of fact; rather, Defendant argues that the Magistrate Judge merely affirmed the ALJ's findings of fact (i.e., the Plaintiff's RFC assessment) based upon substantial evidence found in the record as a whole. [Doc. No. 13] at pp. 1-3. In support of her stance, Defendant argues that the Plaintiff's residual capacity to "pull" with his left upper extremity does *not* automatically require the Plaintiff to be capable of "gripping" with his left hand in every instance. [Doc. No. 13] at p. 1. Defendant supports her argument by citing to record evidence showing Plaintiff's left hand "resemble[s] a 'claw' or a 'crescent wrench.'" Id. Defendant surmises that "[n]othing precludes Plaintiff from using his 'claw' or 'wrench' shaped hand from pulling a level, drawer, and etcetera." Id.

Defendant further argues that, "even if this Court agrees that the ability to pull requires the

---

[4] Ordinarily, this type of argument would subject the Magistrate Judge's M&R to clear error review. See Anderson v. Dobson, 627 F. Supp. 2d 619, 623 (W.D.N.C. 2007) ("A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." (quoting Aldrich v. Bock, 327 F.Supp.2d 743, 747 (E.D. Mich. 2004)); see also Jones v. Hamidullah, 2005 U.S. Dist. LEXIS 36786, *7-8 (D.S.C. 2005) (noting a petitioner's objections to a magistrate's report were "on the whole without merit in that they merely rehash [the] general arguments and do not direct the court's attention to any specific portion of the [report]."). Despite the Plaintiff's likely failure to go beyond merely "disagreeing" with the Magistrate Judge's M&R, the Court will exercise its discretion, out of an abundance of caution, to review the Plaintiff's Objection under a *de novo* standard. However, Plaintiff's counsel is advised that, in the future, any objection to a magistrate judge's M&R must be tailored to highlight a specific issue or error of the magistrate and cannot merely "rehash" prior summary judgment arguments. Otherwise, counsel runs the risk that this Court may not favorably exercise discretion again.

ability to grip, the record is replete with evidence that Plaintiff is able to grip with his left hand."

[Doc. No. 13] at p. 2. In support of this argument, Defendant relies on the record citations contained

in her motion for summary judgment and the M&R. [Doc. No. 13] at p. 2; Tr. at pp. 89-90, 102,

131, 138, 148, 220. Finally, Defendant argues this Court should affirm the Commissioner's

decision and adopt the M&R because any error is harmless. [Doc. No. 13] at pp. 2-3.

3.     *Analysis*

The Court considers Plaintiff's Objection on a *de novo* standard of review. See 28 U.S.C.

§ 636(b)(1). However, the Court's review of the ALJ's underlying decision is not *de novo*; rather,

the Court reviews the decision to determine whether it is based on substantial evidence and whether

it results from the correct application of the relevant legal standards. See 42 U.S.C. § 405(g); Hays,

907 F.2d at 1456. Based on the parties' submissions, the Court is persuaded that (1) there is no

conflict between the ALJ's RFC determination and the record evidence, (2) the disputed portions

of the ALJ's RFC determination are supported by substantial evidence, and (3) the Magistrate

Judge's recommendation should be adopted as modified herein.

i.     ALJ'S OBLIGATIONS IN FORMULATING AN RFC

The Plaintiff has the burden of establishing his RFC by showing how his impairments

affect his functioning. See 20 C.F.R. § 404.1512(c); see also, e.g., Stormo v. Barnhart, 377 F.3d

801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the

claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer

v. Astrue, 2011 U.S. Dist. LEXIS 155161, *7-8 (W.D.N.C. 2011) ("The claimant bears the burden

of providing evidence establishing the degree to which her impairments limit her RFC."), *adopted*

*by* 2012 U.S. Dist. LEXIS 70954 (W.D.N.C. 2012) (Voorhees, J.), *aff'd by* 487 F. App'x 795 (4th

Cir. 2012). An individual's RFC is the capacity an individual possesses despite the limitations

caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); S.S.R. 96-8p, 1996 SSR LEXIS 5. "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." S.S.R. 96-8p, 1996 SSR LEXIS 5; accord Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). The RFC is based on all relevant medical evidence and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); S.S.R. 96-8p, 1996 SSR LEXIS 5. Where a claimant has numerous impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); see Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments." (citations omitted)). It is not the province of this Court, on review of an ALJ's decision, to make credibility determinations, to weigh the evidence, or to make findings of fact as to the RFC determination. See, e.g., Mastro, 270 F.3d at 176.

In the Fourth Circuit, the Commissioner "must consider all the evidence and explain on the record the reasons for [her] findings, including the reason for rejecting relevant evidence in support of the claim." King v. Califano, 615 F.2d 1018, 1020 (4th Cir. 1980). "Even if legitimate reasons exist for rejecting or discounting certain evidence, the [Commissioner] cannot do so for no reason or for the wrong reason." Id. The Court "cannot determine if findings are unsupported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence." Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984). On the other hand, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v.

Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). The burden is on the party attacking

an agency's determination to show that prejudice resulted from the error. Shinseki v. Sanders, 556

U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06, 173 L. Ed. 2d 532 (2009). Furthermore, "a deficiency

in opinion-writing is not a sufficient reason for setting aside an administrative finding where the

deficiency had no practical effect on the outcome of the case." Senne v. Apfel, 198 F.3d 1065,

1067 (8th Cir. 1999); see Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.) ("No

principle of administrative law or common sense requires us to remand a case in quest of a perfect

opinion unless there is reason to believe that the remand might lead to a different result.").

ii.    THE ALJ'S RFC ASSESSMENT IS NOT IN CONFLICT WITH
       DR. HARTMAN'S OPINION

The Court finds Plaintiff's argument that the RFC assessment is in conflict with Dr.

Hartman's opinion is without merit. In relevant part, the ALJ assessed the Plaintiff's RFC as

follows:

> [T]he [Plaintiff] has the residual functional capacity to perform "light" work as defined in
> 20 CFR 404.1567(b) except [as follows] . . . he can lift or carry ten pounds frequently, and
> up to 20 pounds occasionally (from very little, up to 1/3 of an eight hour workday); . . . he
> can perform pushing and pulling motions with his right upper and both lower extremities,
> within the aforementioned weight restrictions; he can only occasionally perform pushing;
> pulling motions with his left upper extremity; he can perform activities requiring manual
> dexterity for both gross and fine manipulation with reaching and handling with his right-
> dominant hand; [but] he can only use his left hand as a guide; . . . .

Tr. at pp. 34-35 (errant quotation mark omitted). As is discussed above, Plaintiff's submissions

contend that the RFC's "pulling motion" limitation directly contradicts, without explanation, Dr.

Hartman's medical opinion, which purportedly finds that Plaintiff is unable to "grip" with his left

hand. Plaintiff insists the ALJ cannot conclude that he is capable of engaging in "pulling motions"

without also finding that he is able to "grip" with his left hand.

Nevertheless, Plaintiff cites absolutely no evidence to support his proposition. Defendant's

rebuttal contemplates a contrary theory (that a "pulling" motion does not require a "gripping" action); however, her brief similarly lacks convincing supporting authority. While the ultimate resolution of this inquiry likely lends itself to a bit of common sense,[5] neither this Court nor the Magistrate Judge can make the necessary findings of fact to support either proposition. See Schilling v. Colvin, 2013 U.S. Dist. LEXIS 42193, *16 (E.D.N.C. 2013) ("[W]here '[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder,' the court 'cannot undertake it in the first instance.'" (quoting Meyer v. Astrue, 662 F.3d 700, 707 (4th Cir. 2011)) see also Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Fortunately, as will be discussed below, the ALJ has already made the findings of fact necessary to resolve this question in a manner that is consistent with the RFC as a whole and Dr. Hartman's opinion.

Specifically, the ALJ's RFC assessment contains two findings of fact that, when considered in conjunction, belie Plaintiff's suggestion of an irreconcilable conflict. With respect to his "left upper extremity" and "left hand," the RFC limits the Plaintiff's functional capabilities in two critical ways: first, Plaintiff is limited to performing "occasional" pushing and pulling motions with his "left upper extremity;" and second, when engaging in activities that require "manual dexterity for both gross and fine manipulation" involving "reaching and handling," Plaintiff's "left hand" can be utilized only "as a guide" in aide of his "right-dominant hand." See Tr. at pp. 34-35. Plaintiff suggests that these limitations are inconsistent with Dr. Hartman's opinion. However, this argument is erroneous because it interprets the RFC's limitations singularly and in isolation, whereas the RFC is meant to be a *cumulative* statement of the Plaintiff's residual capacity to function in a work environment. See, e.g., 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1545;

---

[5] For example, it is likely fair to say that an individual can engage in a "pulling" motion with or without engaging in a "gripping" action, depending on the specific circumstances.

Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985); Combs v. Weinberger, 501 F.2d 1361, 1363 (4th Cir. 1974). The Court is persuaded that Plaintiff's mistaken understanding can be corrected through a more astute analysis of the ALJ's findings, which will show that the RFC, when considered *cumulatively*, appropriately limits the Plaintiff's functional capabilities in a manner that does not prejudicially conflict with either itself or record evidence.

In the RFC, the ALJ first found that Plaintiff is capable of "occasionally" performing "pulling motions" with his "left upper extremity." Tr. at pp. 34-35. The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles[6] (the "SCODICOT") describes "pulling" as the act of "[e]xerting force upon an object so that the object moves toward the force (includes jerking)." See SCODICOT, Appendix C., Strength, b. Pulling. Under the SCODICOT, "pulling" does not, on its face, require or encompass "handling," "gross manipulation," or "fine manipulation." Id. It also does not specifically reference or discuss the "hand." Id. Relevant regulations also recognize that the act of "pulling" and acts of the hand are to be analyzed as separate functional categories. Compare 20 C.F.R. § 404.1569a(b) ("Exertional limitations" include "pushing" and "pulling") with 20 C.F.R. § 404.1569a(c) ("Nonexertional limitations" include "handling"); accord 20 C.F.R. § 404.1521(b)(1) ("Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include - Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling[.]"); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B.2.b.(2)c. In fact, a quick review of other court decisions show that ALJs analyze a claimant's ability to "push and pull" versus "handle and finger" separately. See, generally, Maddox v. Colvin, 2015

---

[6] The SCODICOT, as a supplement to the Dictionary of Occupational Titles ("DOT"), is a publication of the United States Department of Labor and is important evidence to be relied upon by ALJ's in making disability determinations. See, e.g., 20 C.F.R. § 404.1560(b)(2); 20 C.F.R. 404.1566(d); 20 C.F.R. 404.1567; 20 C.F.R. 404.1569; 20 C.F.R. 404.1569a; S.S.R. No. 00-4p, 2000 SSR LEXIS 8, *1, 4 (2000).

U.S. Dist. LEXIS 17965, *8-11 (M.D. Fl. 2015) (finding that, without supporting citation to the record or other law, a limitation on a plaintiff's ability to "push," "pull," and "finger" does not translate, as a matter of law, into a limitation on the plaintiff's ability to "handle"); Thomas v. Astrue, 2010 U.S. Dist. LEXIS 63967, *8 (D.S.C. 2010) (explaining that a plaintiff could frequently handle and finger but should not push and pull); Rollins v. Astrue, 2009 U.S. Dist. LEXIS 119149, *11-13 (D.S.C. Dec. 22, 2009) (discussing ability to push and pull as separate from the ability to handle, finger, and feel). Thus, it follows that the act of "pulling" does not *necessarily* require "handling" or "fingering" – i.e., use of the hand.

While the Court acknowledges that the RFC applies the "pulling" limitation to the Plaintiff's whole "left upper extremity" (which necessarily includes his left hand), the Court also notes that the ALJ's finding on this point cannot be considered in an isolated fashion.[7] Rather, because the RFC is intended to encompass the "most" that the Plaintiff can do in a work environment, this limitation must be considered in light of all the RFC's limitations. See, e.g., 20 C.F.R. § 404.1545(a)(1). Therefore, the Court must now analyze whether the RFC contains additional limitations that may further narrow the finding that Plaintiff's "left upper extremity" can engage in "pulling motions."

Continuing his RFC assessment, the ALJ next limited the Plaintiff's "left hand" to only being capable of use "as a guide" when performing actions such as "reaching" or "handling," wherein "manual dexterity" is involved that requires "gross and fine manipulation" of the hand. "Handling" constitutes "gross manipulation" and "fingering" is "fine manipulation." See Medina v. Barnhart, 2004 U.S. Dist. LEXIS 3868, *8 (S.D.N.Y. Mar. 11,2004); see also Hanna v. Astrue,

---

[7] Had the ALJ concluded his RFC assessment with only a broad limitation to Plaintiff's "left upper extremity" and without finding further limitations to Plaintiff's "left hand," then Plaintiff's argument may hold water. However, because the ALJ continued his findings with additional and more specific limitations (as is discussed immediately below), Plaintiff's argument lacks merit.

395 Fed. App'x 634, 635 (11th Cir. 2010); <u>Green v. Astrue</u>, 2010 U.S. Dist. LEXIS 60602, *16 (N.D. Ill. 2010) (noting ALJ found claimant limited to "frequent fingering (defined as fine manipulation . . .) and frequent handling (defined as gross manipulation)"); <u>Osborn v. Astrue</u>, 2010 U.S. Dist. LEXIS 69690, *31 (N.D. Ill. 2010) (finding "handling" and "fingering" are "manipulative limitations"); <u>Greenwood v. Barnhart</u>, 433 F. Supp. 2d 915, 926-927 (N.D. Ill. 2006); <u>Carson v. Barnhart</u>, 242 F.Supp.2d 33, 38 (D. Me. 2002) (stating that "handling" is "gross manipulation"); <u>accord</u> 20 C.F.R. § 404.1569a(c)(1) ("[E]xamples of nonexertional limitations or restrictions include the following: . . . (vi) You have difficulty performing the manipulative or postural functions of some work such as reaching [or] handling . . . ."). The SCODICOT defines "handling" as "[s]eizing, holding, *grasping*, turning, or *otherwise working with [a] hand or hands*." <u>See</u> SCODICOT, Appendix C. Physical Demands, 9. Handling (emphasis supplied). While relevant regulations do not define what it means to "grasp," common sense and ordinary construction of that term suggest that it is substantially equivalent to "grip." *Grip Definition*, MERRIAM-WEBSTER.COM, http://www.merriam-webster.com/dictionary/grip (last visited Sept. 25, 2015); *Grasp Definition*, MERRIAM-WEBSTER.COM, http://www.merriam-webster.com/dictionary/grasp (last visited Sept. 25, 2015) (equating "grasp" to "clutch"). Moreover, "reaching" is defined to mean "[e]xtending hand(s) and arm(s) in any direction." <u>See</u> SCODICOT, Appendix C. Physical Demands, 8. Reaching. Thus, the ALJ, in consideration of the whole record, made a factual finding that when use of Plaintiff's left hand is required, whether "extending [his] [left] hand[] [or] arm[] in any direction," he is unable to perform "handling," "grasping," or "gripping" actions with that hand. <u>See</u> Tr. at pp. 34-35. Instead, Plaintiff's left hand can only be utilized "as a guide" for his "right-dominant hand." <u>Id.</u>

When the above-discussed specific limitations to Plaintiff's left hand are considered in conjunction with the ALJ's generalized limitation on Plaintiff's left upper extremity, it becomes clear that the ALJ assessed the RFC in a manner that is both internally harmonious and consistent with Dr. Hartman's opinion. Taken together, the ALJ's RFC assessment, as it pertains to Plaintiff's left upper extremity and hand, can be logically and precisely stated as follows:

> The Plaintiff is limited to occasionally engaging in pulling motions with his left upper extremity except to the extent such pulling motions require the Plaintiff to engage in handling, grasping, or gripping actions utilizing his left hand. When such pulling motions are to be engaged, the Plaintiff's left hand can only be utilized as a guide for Plaintiff's right-dominant hand.

Stated another way – if Plaintiff *must* utilize his left hand to grip in order to engage in a pulling motion, then he cannot engage in that pulling motion; however, if Plaintiff *does not* have to utilize his left hand to engage in a pulling motion, then Plaintiff can "occasionally" engage in such pulling motions.

The Court finds that this analysis is a straightforward explanation of the ALJ's specific findings as to the Plaintiff's residual capacity to utilize his "left hand" and "left upper extremity" as each pertain to the acts of "gripping" and "pulling" – an analysis which can be easily deduced from a careful consideration of the RFC findings as a whole. The Court holds that the ALJ's RFC findings are not internally inconsistent or in conflict with Dr. Hartman's opinion. Critically, the Court has not engaged in its own findings of fact regarding the Plaintiff's RFC; rather, the Court has only explained the ALJ's findings (as they are memorialized in the RFC assessment) in response to the Plaintiff's Objection. The Court has also not adopted *post hoc* rationalizations of the ALJ's decision – again, the Court has only explained the logical import of the ALJ's RFC assessment. Accordingly, the Court rejects Plaintiff's Objection on this point as being without merit.

Because there is not a factual inconsistency between the RFC and the record evidence that must be further explained by the ALJ, and because additional factual findings do not need to be made, the Court need not tread on uncertain factual ground in reviewing the M&R or the ALJ's RFC findings. Therefore, the Court will affirm the ALJ's findings if they are supported by substantial evidence.

### iii. THE ALJ'S RFC ASSESSMENT IS BASED UPON SUBSTANTIAL EVIDENCE

The Court finds that the ALJ relied on substantial evidence in crafting the Plaintiff's RFC. As Plaintiff and Defendant argue, the record contains several instances where Plaintiff's ability to "grip" is discussed. Tr. at pp. 89-90, 102, 131-37, 138, 148, 220. Though Defendant argues otherwise; Plaintiff cites to Dr. Hartman's opinion as evidence that Plaintiff is unable to grip with his left hand. Tr. at pp. 131-37. While the ALJ neither specifies the amount of weight afforded Dr. Hartman's opinion nor specifically discusses the opinion as it relates to the functionality of Plaintiff's "left upper extremity" or "left hand," the decision itself indicates that he actually considered Dr. Hartman's opinion and "the entire record" in arriving at his assessment. See Tr. at 33 (discussing portions of Dr. Hartman's examination notes and noting that he arrived at the RFC after a "careful consideration of the entire record"). Absent evidence to the contrary, the Court takes the ALJ at his word. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir.2005)).

Dr. Hartman's opinion provides substantial evidence for the ALJ's RFC findings as they relate to Plaintiff's "left upper extremity" and "left hand" (as such findings are discussed above). First, Dr. Hartman found that Plaintiff's birth defect could "compromise flexion and extension of [his] wrist" and that, "[d]ue to his physical deformity, [Plaintiff] would not be able to perform any fine motor skills or lifting with his left hand . . . ." Tr. at pp. 135, 137. The doctor came to this

conclusion from a physical examination, consideration of the Plaintiff's prior medical records, and an inability to test Plaintiff's grip or grip strength because of his "congenital deformity." Tr. at 131, 134-35. The doctor was also able to test the fine and gross manipulations of Plaintiff's right hand but not his left hand. Id. at p. 134. The opinion indicates that Dr. Hartman did not overlook Plaintiff's left hand, but instead evaluated it and determined that testing was impossible due to his physical deformity. Id. The opinion of the non-examining physician, Dr. Robert Pyle, also supports Dr. Hartman's conclusion that Plaintiff is unable to grip. See Tr. at p. 220 ("[Plaintiff] cannot grasp with left hand."). The Court finds that Dr. Hartman's opinion constitutes "substantial evidence" supporting the functional limitations the ALJ placed on Plaintiff's left hand. Though Defendant cites other potentially "substantial" record evidence to suggest that Plaintiff does have the ability to grip, the Court cannot reweigh the evidence and must uphold the limitations determined by the ALJ.

Second, with respect to Plaintiff's ability to engage in "occasional" "pushing" and "pulling" motions with his "left upper extremity," the Court also finds that substantial evidence exists to support the ALJ's conclusion as to this issue. According to his notes, Dr. Hartman performed a thorough examination of the range of motion in Plaintiff's upper extremities. Tr. at pp. 135-37. He found Plaintiff's "elbow and forearm" to be normal with "no evidence of atrophy." Tr. at p. 134. He also found that Plaintiff's shoulder and hips had normal range of motion. Id. He also found Plaintiff has a normal gait and does not utilize an assistive device to walk or stand. Id. Critically, Dr. Hartman found that Plaintiff had "5/5 strength throughout [his] upper and lower extremities." Id. at p. 134. Although not specifically discussed by the ALJ in his written decision, Dr. Hartman's findings are also consistent with other record evidence, which shows that Plaintiff is able to utilize the strength of his upper extremities (as a whole) to engage in "pushing" and

"pulling" motions. See Tr. 89-90, 148, 211-12, 214, 220; see also Reid, 769 F.3d at 865 ("[There is] no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]") (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)); Russell v. Chater, 1995 U.S. App. LEXIS 17254, at *8 (4th Cir. 1995) (per curiam) (explaining that the Fourth Circuit has not "establish[ed] an inflexible rule requiring an exhaustive point-by-point discussion in all cases"); accord Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."); Delbridge v. Colvin, 2015 U.S. Dist. LEXIS 10858, *5-6 (E.D.N.C. 2015) (holding that where record evidence is consistent with and does not contradict the ALJ's findings, then such evidence need not be explicitly discussed in the ALJ's findings); Williamson v. Colvin, 2014 U.S. Dist. LEXIS 35889, 37-38 (D.S.C. 2014) ("[A]n ALJ is not required to specifically discuss and analyze every piece of evidence in the case in their narrative opinions so long as it is possible for the reviewing court to realize that all relevant evidence was considered, though not written about, in reaching the ultimate decision."); Holt v. Colvin, 2014 U.S. Dist. LEXIS 159556 (S.D. Ind. 2014) ("While the ALJ did not specifically cite to the particular page in the Record where the disability forms are found, it is obvious she relied on the State Agency psychologists' opinions as they are identical to her own."). Thus, the ALJ's finding that Plaintiff can "occasionally" engage in "pulling motions" with his "left upper extremity" is supported by "substantial evidence." Accord Gaskin v. Comm'r of Soc. Sec., 280 Fed. App'x 472, 477 (6th Cir. 2008) (finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment). Therefore, the Court finds that the ALJ's RFC assessment, as to the challenged portions, is supported by substantial evidence.

Based on the above, the Court finds that the RFC assessment is supported by substantial evidence, internally consistent, and does not conflict with Dr. Hartman's opinion that Plaintiff is unable to perform "gripping" actions with his left hand. Indeed – if Plaintiff must grip with his left hand to pull, then the ALJ found that he does not have the residual functional capacity to engage in the pulling motion with his left upper extremity; but if he does not have to grip in order to pull, then Plaintiff may "occasionally" engage in pulling motions. Because the Court resolves the Plaintiff's Objection through a logical exploration of the RFC, the Court need not discuss or analyze whether the ALJ's decision should be affirmed because other record evidence may suggest that the Plaintiff *can* actually engage in "gripping" actions with his left hand, as Defendant suggests and the M&R appears to accept, albeit in the alternative.[8] The ALJ did not base his findings on such evidence and this Court cannot reexamine his determination.

---

[8] Indeed, the Court finds that such analysis, even if required, would be improper. To the extent the record does indicate that the Plaintiff has the residual capability to "grip" with his left hand, such record evidence is potentially in conflict with Dr. Hartman's alternative finding. The obligation is on the ALJ, not the Court or Magistrate Judge, to resolve conflicts in the evidence. See, e.g., Meyer, 662 F.3d at 707. Here, the Plaintiff correctly points out that these potential conflicts in the evidence were not discussed by the ALJ. Remand is unnecessary, however, because the Court has found that the ALJ *did* favorably account for the Plaintiff's inability to perform gripping functions by making a factual finding that Plaintiff's left hand is incapable of performing "gross manipulations" and "handling" activities. *Supra*. The ALJ's failure to explicitly discuss the evidence and his reasoning for arriving at that determination is harmless error because the determination was decided in favor of Plaintiff. See, e.g., Dyrda v. Colvin, 47 F. Supp. 3d 318, 326 (M.D.N.C. 2014) ("[T]he Fourth Circuit has embraced harmless error review of administrative decisions, such that, if an ALJ erroneously considered or failed to consider some evidence, remand is not appropriate unless the claimant was prejudiced."); see also Camp v. Massanari, 22 Fed. Appx. 311 (4th Cir. 2001). Had the RFC assessment concluded that Plaintiff *does* have the residual capacity to "grip" with his left hand, despite contradictory record evidence, then remand might have been required. However, because the RFC did not come to that conclusion, remand is not appropriate.

**IV.     DECRETAL**

**IT IS, THEREFORE, ORDERED THAT**

(1)     The Plaintiff's Objection to the M&R (Doc. No. 12) is **OVERRULED** and the

M&R (Doc. No. 11) is **ADOPTED** as **MODIFIED** by the analysis contained

herein;

(2)     The Commissioner's Motion for Summary Judgment (Doc. No. 9) is **GRANTED**;

(3)     Plaintiff's Motion for Summary Judgment (Doc. No. 7) is **DENIED**; and

(4)     The final decision of the Commissioner (Tr. at pp. 27-38) is **AFFIRMED**.


**SO ORDERED**.



Signed: October 21, 2015


Richard L. Voorhees
United States District Judge